IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**NATHANIEL BROWN**                                                                   **MOVANT**

v.                                                                             **No. 4:16CR74-NBB-JMV**

**UNITED STATES OF AMERICA**                                        **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Nathaniel Brown to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Mr. Brown has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed for failure to state a claim upon which relief could be granted.

*Habeas Corpus* **Relief Under 28 U.S.C. § 2255**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*.

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id*. The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**

Nathaniel Brown was a medical doctor in Cleveland, Mississippi, and he served as the medical director for both Milestone Hospice and Sandanna Hospice. To qualify for hospice care, a Medicare patient must be certified by a physician as terminally ill with a life expectancy of six months or less if the terminal condition runs its normal course. As medical director, Brown falsely certified patients as terminally ill and referred them to Sandanna Hospice and Milestone Hospice. Brown's false certifications enabled Milestone Hospice and Sandanna Hospice to bill Medicare and receive funds from Medicare.

Sandra Livingston owned and operated Sandanna Hospice and Milestone Hospice. Lara Thompson was employed by Livingston at both Sandanna Hospice and Milestone Hospice. Thompson assisted Livingston in using patient recruiters to collect names and identifying information and to solicit patients for Sandanna Hospice and Milestone Hospice that were not hospice appropriate. These patient recruiters often transported the patients directly to Brown at an office building in Cleveland, Mississippi. Brown certified numerous patients as terminally-ill and qualified for hospice when they were not terminally-ill and did not qualify for hospice care. At the time he certified the patients, Brown knew that Livingston would submit fraudulent claims to Medicare and Medicaid and receive payments from Medicare and Medicaid based on his false certifications and referrals.

The claims submitted for patients that were certified as terminally ill and referred by Brown resulted in the payment of approximately $1,941,254 in Medicare funds to Sandanna Hospice and Milestone Hospice. From on or about November 2011 to on or about January 2014, Livingston, through Sandanna Hospice and Milestone Hospice, paid Brown approximately $47,750 in checks, plus additional payments in cash.

Livingston and Thompson pled guilty to separate Informations charging them with healthcare fraud conspiracy in violation of Title, 18 United States Code, Sections 1347 and 1349.  In December 2015, Livingston was sentenced to serve 36 months imprisonment and ordered to pay $1,098,639 in restitution.  *See* Livingston Judgment, Case No. 3:15CR07, Doc # 24.  In February 2016, Thompson was sentenced to serve 13 months imprisonment and ordered to pay $1,008,463 in restitution, of which $736,688 was joint and several with Livingston with the balance of $271,775 being individually owed. *See* Thompson Judgment, Case No. 4:15CR066, Doc. # 18.

Brown was indicted on July 20, 2016 on one count of healthcare fraud conspiracy and five counts of healthcare fraud in violation of Title 18, United States Code, Sections 1347 and 1349.  Brown pled guilty to the one count of healthcare fraud conspiracy on May 2, 2017, and the remaining charges were dropped at the conclusion of his sentencing.

In entering his guilty plea, Brown agreed with the government's factual basis and admitted the facts as described *supra*.  During the hearing, the Court advised Brown that his guilty plea could result in him being held liable to pay restitution, and his plea agreement provided that restitution would not be limited to the count of conviction.  *See* Change of Plea Tr., p.9 and Brown Plea Agreement, p. 2.  Brown's factual basis specifically referenced the amount of Medicare funds paid as a result of his certifications of a terminal illness:  "The claims submitted for patients that were certified as terminally ill and referred by DR. NATHANIEL BROWN resulted in the payment of approximately ***$1,941,254*** in Medicare funds to Sandanna Hospice and Milestone Hospice." Change of Plea Tr., p.13 (emphasis added).

The United States Probation Service prepared a Pre-Sentence Investigation Report (hereinafter "PSR") and calculated Brown's recommended guideline range as 46 to 57 months based on an amount of loss of $1,941,254.  PSR ¶ 85.  Brown received a two-point enhancement for being

convicted of a federal healthcare offense with a loss of more than $1,000,000 and a two-point enhancement for the abuse of a position of trust. PSR ¶ 49 & 51.

The PSR calculated the amount of restitution applicable to Brown as $1,941,254, the total amount that was fraudulently paid to Milestone Hospice and Sandanna Hospice as a result of Brown's certifications of a terminal illness. PSR ¶ 98. This amount was explicitly described and agreed upon in Brown's factual basis. He did not object to the PSR. Sentencing Tr. p.3. Prior to sentencing, the government filed a Motion for Downward Departure based on Brown's cooperation with the government's ongoing healthcare fraud investigations.

The Court granted the government's Motion for Downward Departure and sentenced Brown to a below-guideline sentence of 39 months. The Court also ordered Brown to pay a total of $1,941,254 in restitution. The Court explained that Brown was jointly and severally liable for a portion of the restitution and solely liable for a portion of the restitution: "You are jointly and severally liable with other defendants who conspired with you in this scheme, [Sandra] Livingston and Lara Lynn Thompson… And you are individually liable for **$570,839**." Sentencing Tr., p.12 (emphasis added).

Brown's liability for the restitution amount, relative to Sandra Livingston and Lara Thompson, breaks down as follows:

| | |
|---|---|
| BROWN Joint and Several with Both Livingston and Thompson | $736,688.02 |
| BROWN Joint and Several with Livingston | $361,951.19 |
| BROWN Joint and Several with Thompson | $271,775.30 |
| BROWN Solely and Individually | $570,839.49 |
| **TOTAL AMOUNT OF BROWN'S RESTITUTION:** | **$1,941,254.00** |

Brown is liable for a total of $1,941,254 – and is solely liable for $570,839.49 of that total of $1,941,254. He did not object to the amount of his restitution and he did not appeal his sentence. The Judgment of the District Court became final on August 30, 2017, fourteen days after entry of judgment. *See* Fed. R. App. P.

4(b)(1)(A). On August 16, 2018, Brown timely filed the present 28 U.S.C. § 2255 Petition, in which he challenges the amount of restitution ordered by the court.

### The Amount of Restitution Is Not a Valid Issue for Resolution Under 28 U.S.C. § 2255

A challenge to the amount of restitution cannot form the basis of a valid § 2255 claim: "[W]e make plain today that *complaints concerning restitution may not be addressed in § 2255 proceedings*." *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999) (emphasis added). The Fifth Circuit's language could not be clearer, and the reasoning behind it is sound: the restitution amount does not affect a defendant's imprisonment, which is the concern of 28 U.S.C. § 2255. *Holstein v. United States*, 2015 WL 1514986 at *8 (N.D. Tex. 2015) ("Claims challenging monetary penalties, whether a fine, restitution, or amount of loss, are ordinarily not cognizable in a motion to vacate because such claims do not concern the defendant's custody.) This ground for relief must be dismissed for failure to state a claim upon which relief could be granted.

### Brown's Counsel Requested a Downward Departure, Which His Attorney Requested

In his second ground for relief, Mr. Brown alleges that defense counsel was deficient for failing to request a reduction in his sentence due to his alleged minor participation in the conspiracy, particularly regarding counsel's decision not to object to the restitution amount. Brown's counsel did not object to the apportionment of restitution; however, he did request a downward departure from the sentencing guidelines. Sentencing Tr., p. 3-4. The government also made this request, which the court granted, resulting in a significantly lighter sentence of imprisonment than Mr. would otherwise have received. The remainder of Mr. Brown's second ground is a repeat of the first – he believes his restitution is too high. As discussed above, a challenge to the amount of restitution cannot form the basis of a valid claim under 28 U.S.C. § 2255. This ground for relief is without substantive merit.

**The United States Has Standing**

In his final ground for relief, Mr. Brown argues that the "Sentencing court allowed Movant's Article III constitutional rights to be denied when the court failed to hold the United States of America to its requirement to allege and prove 'actual, concrete injury-in-fact.'" This argument is wholly without merit.

Mr. Brown pled guilty, admitting the facts alleged by the government without objection. He posed no objections to his Presentence Investigation Report. He did not appeal his sentence. He has offered no facts to support a change in the restitution amount. In addition, the amount of restitution is not a valid ground for relief under 28 U.S.C. § 2255. The instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 is thus wholly without merit and will be denied.

**Conclusion**

In sum, Mr. Brown's grounds for relief are wholly without merit, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 23rd day of August, 2021.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U.S. DISTRICT JUDGE